UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,
    Plaintiff,

Case No.: 2:20-cr-19-1

vs.

CHRISTOPHER BRENNER COOK,
    Defendant.

JUDGE GRAHAM

## SENTENCING MEMORANDUM

Now comes, Christopher Cook, by and through counsel, Peter Scranton, and respectfully requests the Court impose a sentence of 92 months of imprisonment, and respectfully requests the Court consider a hybrid sentence that would include a period of home confinement.

**FACTORS UNDER SEC. 3553(a)**

In determining a sentence, the court must consider the several factors of sec. 3553(a) to determine if the sentence is minimally sufficient to satisfy sec. 3553(a)(2)'s purposes of sentencing. The weight to be given to these factors remains within the discretion of the Court - so long as the sentence is reasonable.

 (a)(1) **Nature and circumstances of the offense and the history and characteristics of the defendant.**

**Nature and Circumstances of the Offense**

The allegations in this case are extremely serious. Mr. Cook is embarrassed and remorseful for his actions. He wishes he could go back in time and undue what was done but he accepts responsibility for his actions and understands the seriousness of the choices he made.

**History and Characteristics of the Defendant**

Christopher's parents separated when he was thirteen and eventually divorced when he was seventeen. The separation was particularly hard on Christopher. He enjoyed a close and loving relationship with his father that suffered greatly during the separation and divorce. He had a difficult time in school and making friends. He turned to online relationships at an impressionable and vulnerable time in his life and certainly became involved with the wrong crowd. He described himself as young, a natural introvert, inexperienced, immature, and intellectually curious. Chris also dealt with attention deficit disorder. The relationships filled a void in his life which started him down a path he did not recover from until after law enforcement intervention and the ongoing counseling that drastically helped Christopher's state of mind and outlook on life.

**(a)(2)(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (a)(2)(B) to afford adequate deterrence to criminal conduct; and the need to avoid unwarranted sentence disparities**

A period of 92 months is comparable to other cases of similar conduct. In the *United States v. Reznicek*, 2022 WL 1939865, at *1 (8th Cir. June 6, 2022), a 96-month term of imprisonment was imposed for a defendant who committed arson and vandalism to cut holes in the Dakota Access Pipeline.

Mr. Cook is well aware that the sentence must not only educate himself and the co-defendants as to the seriousness of the offense but should make others in the community aware that similar actions will be punished. The Government cites *United States v. Tounisi*, 900 F.3d

982, 987(7th Cir. 2018) stating that others thinking about conspiring to commit acts of terrorism must receive an unequivocal message that such behavior will not be tolerated by the justice system. Mr. Cook would like the Court to consider, however, that at the point he was devoted to his ideology, Mr. Cook and Mr. Sawall both expressed their commitment to die for their cause; even to the point of wearing suicide necklaces. The nature of what leads to these charges does not conform to a rational way of thinking about the justice system or its consequences.

Mr. Cook suggests that what is more relevant to his particular case is his recognition that what he did was extremely serious, his progress and maturity since his actions took place, and his plan to move forward with his life as a productive citizen.

### (a)(2)(C) to protect the public from further crimes of the defendant.

Judges must explain their acceptance, or rejection, of "nonfrivolous reasons" for a sentence different from what the guideline recommends, *id.* at 2468 but need not consider arguments that are not raised. *Gall v. United States,* 128 S. Ct. 586, 599 (2007). Thus, defense counsel must assist the Court in understanding the flaws in the guideline and make a strong record for appeal.

The goal is a sentence that is sufficient but not greater than necessary to achieve sentencing purposes. Christopher is pursuing a life that includes furthering his education and plans to find a career that takes into consideration the criminal record that will follow him for the rest of his life. He has proactively looked into a path where that is possible. He has a good relationship with his counselor and Mr. Libster has stated that Chris appears remorseful and has expressed concern for others following a similar path. He has been meeting weekly with his counselor to obtain tools and improve decision making. He has an incredible support system at home and his family has seen noticeable improvement in Christopher's decision making and

demeanor. He was young and has matured over the last few years. He would be the first to tell you he does not recognize himself from that time period. However, he understands the seriousness of his actions and is eager to put this behind him and move on with his life.

**Conclusion**

Mr. Cook has made great progress and has a good working relationship with his counselor. He has a strong support system at home. He was motivated to help law enforcement in deterring similar conduct by others. Mr. Cook has made plans for his future and is hopeful for his life going forward. We respectfully request a sentence that takes that into consideration. Thank you.

Respectfully Submitted,

Peter Scranton (0080725)
Counsel for Defense
*Luftman, Heck, & Associates*
6253 Riverside Drive, Suite 200
Dublin, OH 43017
614-517-0913
pscranton@lawlh.com

## Certificate of Service

A true copy of the foregoing was served upon all parties via electronic filing this 28th day of October 2022.

Respectfully Submitted,

_____
Peter Scranton (0080725)

Attached: Letter from his counselor, Kevin Libster, LPCC

Letter from his Father, Matthew Cook

Letter from his Mother, Diane Cook

## Peter Scranton

**From:** Kevin Libster <kevinlibster@kellercounseling.org>
**Sent:** Monday, October 17, 2022 10:42 AM
**To:** Peter Scranton
**Subject:** Letter

To whom it may concern,

My name is Kevin Libster and I'm an independent licensed professional counselor working at Keller Counseling and Associates. I have been working with Christopher Cook since April 18, 2022. During this time we have been meeting weekly addressing treatment goals to increase anger management, decrease negative thoughts, and improve decision making. Christopher has been engaged in session and made progress on these goals. Specifically, Christopher appears to be remorseful for past thoughts and actions. He has recognized how his views put him on a self-destructive path. He has expressed concern for others following a similar path. Christopher has reflected having a desire to help others in the future. He explored ways in which he can assist others by offering insight as a warning to those with similar views. Please let me know if you have any further questions or concerns. Thank you for your time.

...

*Kevin Libster, LPCC*
Clinician

### Keller Counseling and Associates

3380 Tremont road, suite 280
Columbus, OH 43221-2112
P: 614-822-7819
F: 614-372-5590
www.kellercounseling.org

**CONFIDENTIALITY NOTICE** - The information enclosed with this transmission are the private, confidential property of the sender, and the material is privileged communication intended solely for the individual indicated. If you are not the intended recipient, you are notified that any review, disclosure, copying, distribution, or the taking of any other action relevant to the contents of this transmission are strictly prohibited. If you have received this transmission in error, please notify us immediately at 614-822-7819.

1

10/23/2022

To: The Court

From: Matthew Cook, Christopher Cook's father

I am writing to the court to tell you about my son Christopher. He is a good kid that went down the wrong path that many young impressionable teenagers can do when they feel they don't have anywhere else to go. When Christopher was younger, we were close however, in the teen years his mother and I separated and were eventually divorced, and I think that was very hard on my relationship with Christopher. I became the parent that was only contacted when he needed something. I did not realize the trouble he was really getting into and thought we didn't talk much due to the situation with his mother and me.

Fast forward to after the charges were brought up and he had to cooperate with the FBI. He stopped the activities with the online groups and readings. He started working and seems to be doing much better. He now speaks to me much more often and our relationship is improving. He comes over to my house more often to just say hello. We started a model train diorama together after Christmas last year. Christopher has been going to weekly counseling sessions and has become more responsible over the last year.

Being sentenced to prison will not do anyone any good. He has been living with the consequences of his actions for the last few years and is working on improving how he deals with everyone. I feel going to prison will send him in the wrong direction that society would want. He already will be in probation for many more years with monitoring. His actions came about during the impressionable teen years but for the last year or two he has become more adult like. He was enjoying working at Home Depot before he lost his job due to the announcement in the news of his situation. He worked with their HR department hoping to continue working there but HR felt the charges did not permit that. He wants to get back to work somewhere or go back to school. He has been making much better choices now that he is older and prison will reverse that progress. I feel the continued supervision, counseling, and just the growing up will help him to become a successful member of society.

I love my son. Please take into account that he was a teenager when his problems began and that he has grown up and sees the errors he has made and allow him to not go to prison.

Sincerely,

Matthew Cook

October 17, 2022

Jessica W. Knight
Assistant United States Attorney
U.S. Attorney's Office, Southern District of Ohio

Dear Ms. Knight,

My name is Diane Augustine Cook and Christopher Brenner Cook is my son. As you draft Christopher's sentencing recommendation, I respectfully request leniency for him and I beg that you not recommend prison time for this offence.

I would like to tell you a little about Christopher's background and family. Christopher is my eldest child and he was the first grandchild on both sides of the family. I do not think there was ever a child more wanted or eagerly anticipated than Christopher and to say that our family was excited about the arrival of their first grandchild would be a massive understatement.

From the time he was an infant until he was four years old he was home full time with a nanny while his father and I worked full time. When he was four, we enrolled him at Mary Evans Child Development Center for both daycare and pre-school/pre-k. Christopher has always been a very energetic and precocious child but we noticed that he was struggling to adjust to his new preschool and was growing increasingly difficult to manage at home. His father and I chalked it up to having a high energy, strong willed child and we thought he simply needed more time to adjust to the change in his child-care situation.

Unfortunately, Christopher continued to struggle emotionally and behaviorally, both at day care and at home. We started meeting with a child psychologist, which resulted in a diagnosis of ADHD and Sensory Processing Disorder. After working weekly with a therapist for over a year, medication was recommended and we tried several different ones before we found the right one for him. Christopher's brother Liam was born towards the end of kindergarten and he was very excited to have a brother.

Once Christopher was on the right medication, we were on a much better track and he started 1st grade. Christopher was a happy and loving child. Our family was very close knit and Christopher enjoyed lots of time with our extended family on both sides. As a young boy, Christopher enjoyed Boy Scouts, camping, and the beach. He loved snakes and playing outside, swimming and going to the zoo. He started playing soccer when he was about three and continued playing until he went to middle school and his dad coached his team until he started playing travel soccer. Even though Christopher is bright, he only did so-so in school. We heard the same feedback from his teachers consistently throughout his academic career: He is a nice boy, honest, and smart but lacks focus and does not work to his full potential. Despite being on medication, he continued to struggle with focus and had a hard time making friends and connecting with peers.

School became much more difficult for him as he transitioned out of elementary school into middle school and high school. He had a few minor disciplinary issues at school but looking back, I can

1

see now that he really struggled with feeling accepted and making friends. His father and I started having marital problems that were unrelated to Christopher and his brother but still had a significant impact on him and his behavior during this time.

Christopher's father and I separated when he was thirteen and we eventually divorced when he was seventeen. The separation and divorce was tough on the entire family but it hit Christopher particularly hard. While Christopher and his dad enjoyed a close and loving relationship prior to the separation, their relationship suffered greatly during the separation and divorce. Christopher continued to struggle in school and had a hard time making friends. He started working at Kroger when he was sixteen and despite a lackluster academic performance, he liked working and did very well there. Around this time, he also decided to go to Tolles rather than finish high school at Hilliard Darby.

As a young teen, Christopher became very interested in gaming and spent a lot of time playing games on his PS4 and PC. He became increasingly engrossed in playing on line games and I think he was attracted to strategy type games because of his love of history. I see now that playing these games totally consumed him. He found the validation, sense of community, "friendship" and acceptance he did not have at school, with the wrong type of people on the internet. He was depressed, lonely and very young, impressionable and vulnerable. He chose a very dark path that he now realizes was the wrong path.

Christopher started to withdraw from our family during this time and he became increasingly hostile, sullen and depressed. I wish we had recognized this downward spiral faster and had gotten help for him sooner. I will regret this for the rest of my life. His behavior continued to deteriorate and culminated with a big argument right after his eighteenth birthday in February of 2020. Because he refused to follow my rules, I asked him to leave and he left home for a few months.

Now more than two years later, he is simply not the same person he was then. Christopher has always been a loving and affectionate person with so much potential. Over the past two years, I have seen him grow and mature greatly. When he did this, he was still a child – only 16 and 17 years old. He knows what he has done is wrong and he has taken responsibility for his actions and has cooperated fully with the investigation. Over the last two plus years, he has made significant progress in his life: he graduated high school, got his driver's license, leased a car, attended a semester of college, rebuilt and repaired family relationships and started counseling again. Up until his February indictment, Christopher has consistently maintained a job and has kept completely out of trouble on his own, without any monitoring or supervision by the court. He has been cooperative, respectful, and in total compliance of the court ordered monitoring during this presentencing phase. I believe that he can continue this forward momentum if he is allowed to remain at home with his family.

Of course as Christopher's mother, I have known him his entire life - before the incident and now in its aftermath. I feel that I know him better than almost anyone does and I know he has changed. I know he feels great remorse and regret for what he has done and he truly understands why it was wrong because he has told me so and I see it consistently in his demeanor and his actions. He has resumed counseling and he and Kevin Libster, his therapist, have made great progress together. Christopher has worked very hard in therapy and he and Kevin continue to meet weekly. He is on a new path and once again, he is the loving, sweet son he has been most of his life. Christopher wants to work,

2

go to school and begin rebuilding a life for himself. He wants very much to be a productive member of society.

Christopher has a large and extended family that loves him and we are willing to stand behind him and support him. His relationship with his father has been improving and it seems to be trending in the right direction. He lives with me at my home and he has a good relationship with both his brother, Liam, and his stepfather, Kevin, who also live there. His father and I live in close proximity to each other and we co-parent well. He has strong relationships with both sets of grandparents and several aunts, uncles and cousins. Christopher is in an exclusive relationship with Katie Strand and while it is a long distance one, it is going well and he is happy.

Christopher will carry a felony record for the rest of this life and, because he was so young when this happened and only twenty years old right now, he will carry this burden for a very long time – fifty, sixty, or even seventy plus years. That burden is punishment enough. He is not violent or dangerous and sending him to prison is not in his best interest or in the best interests of society or its taxpayers. I do not want to downplay the seriousness of his actions in anyway but I think the fact that he did not hurt anyone in combination with his young age at the time of the offence should be considered. He needs to be at home where he can continue to receive the love and support of his family. He truly wants to be a productive member of society and his family and I will support him and help him do that.

I love Christopher unconditionally and I am prepared to provide housing, financial support, and emotional support for as long as he needs it. I will fully support him financially should he decide to go to college full time or seek vocational training or full time employment. He is welcome to continue living in our home and I will continue to pay for his counseling. My husband, Kevin, and I are prepared to do all we can to support him and help him as he continues to grow and mature as a person and as a productive adult.

Please consider my request for leniency and I thank you for your consideration.

Respectfully,

*Diane Augustine Cook*

Diane Augustine Cook

5446 Spring River Avenue
Dublin, Ohio 43016
dianeacook@me.com
614 601 2668

3